**United States District Court**
**District of Massachusetts**

```
_____
                               )
UNITED STATES OF AMERICA,      )
                               )
          v.                   )
                               )   Criminal Action No.
JAMES PATTERSON,               )   14-10352-NMG
                               )
          Defendant.           )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Defendant James Patterson ("Patterson" or "defendant") has been indicted on five counts of Bank Robbery While on Release, and one count of Attempted Bank Robbery While on Release, all in violation of 18 U.S.C. §§ 2113(a) and 3147.  The indictment stems from a string of bank robberies carried out in a number of cities and towns around the greater Boston area between April and July, 2014.  After an FBI investigation tied Patterson to the robberies, he was arrested outside of a bank in August, 2014.

Defendant now seeks a <u>Franks</u> hearing to challenge the veracity of statements made in the affidavit supporting a warrant to allow GPS tracking of his vehicle.  He has also filed two motions to suppress evidence related to: 1) the allegedly illegal fruits of the GPS tracking and 2) the fruits of his

- 1 -

purportedly illegal arrest.  For the following reasons, all
three motions will be denied.

I.    **Factual Background**

    A.    **Initial Investigation**

    Between April, 2014 and July, 2014, five banks in the
greater Boston area were robbed.  The Massachusetts robberies
took place in: 1) Beverly in April, 2014, 2) Beverly in May,
2014, 3) Somerville in June, 2014, 4) Stoughton in June, 2014
and 5) Salem in July, 2014.  By the time of the fifth robbery in
Salem, the Federal Bureau of Investigations ("FBI") Violent
Crimes Task Force and local police were actively investigating
the robberies and believed that they were likely being carried
out by the same individual.  This was due to a number of
significant similarities provided by witnesses to the various
robberies.

    At each of the first four robberies, witnesses described
the perpetrator as a black male with his face covered, wearing
dark sunglasses and plastic gloves although there were other
slight differences in the description regarding the individual's
build, height and age.  Each time, the robber made a verbal
demand for large denominations of cash, did not use a demand
note and did not display a weapon (although he intimated to
having one hidden in his clothing).  At one of the two Beverly
robberies, a black, four-door sedan that appeared to be a Volvo

was observed on surveillance footage leaving the scene.  At the Stoughton robbery, the robber was seen getting out of and then re-entering a black, four-door sedan that appeared to be the same Volvo.

The Salem robbery occurred at approximately 1:30 p.m. on Sunday, July 20, 2014 during regular bank hours.  Witnesses once more described the robber as a black male with his face covered, wearing large aviator-style sunglasses and clear plastic gloves. He was reportedly wearing a "dark workout suit."  Shortly after the robbery, the suspect was seen leaving the scene in the back seat of an older-model, four-door Volvo sedan with Massachusetts registration plates.  The witness described the Volvo as green with a dark-colored interior and two women were observed in the front seats.

Later on July 20, 2014, the Peabody Police Department received a call from a witness reporting a suspicious incident from earlier that same day ("the Peabody incident"). Approximately 30 to 40 minutes before the Salem robbery, the witness observed a "faded black Volvo" travelling slowly behind his own vehicle in Peabody, less than four miles from the site of the Salem robbery.  He observed the vehicle almost come to a stop, at which point a male got out of the rear seat wearing a red hooded sweatshirt with the hood pulled up to obstruct his face, large aviator-style sunglasses and gloves.  The witness

3

noticed the male was walking in the direction of a TD Bank.  The witness got out of his vehicle and confronted the male in the bank parking lot, questioning him as to why he would enter a bank dressed so suspiciously.  The male then turned around and got back into the Volvo.  The witness then followed the Volvo for a period of time before he was unable to keep up.  He observed that the Volvo had a Massachusetts license plate, number 353PY1, that was crooked and was possibly being held on by string or rope.[1]  Including the man he had confronted, three occupants were inside the vehicle.

Believing that the suspicious activity report from Peabody described the same vehicle and individual involved in the Salem robbery carried out shortly thereafter, law enforcement turned their attention to investigating the license plate number reportedly identified in Peabody.  A search of the Massachusetts Registry of Motor Vehicles database indicated that license plate number 353PY1 was registered to a 1994 black Volvo owned by an individual residing at 9 Dark Lane, Peabody, Massachusetts.  On July 21, 2014, officers observed the black Volvo parked in the driveway at 9 Dark Lane.  The license plates had been removed from the vehicle.

---

[1] The original Peabody Police Department report incorrectly identified the license plate number as 351PY1 but was later corrected to reflect license plate number 353PY1.

**B.    Identification of Defendant as Suspect**

Later that same day, Stoughton Police Department Detective Robert J. Welch ("Detective Welch") applied for a warrant to install a GPS tracking device on the black Volvo registered to license plate number 353PY1.  The supporting affidavit outlined the similarities between the five robberies, including various witnesses' observations of the individual who carried out each robbery.  In the section of the affidavit summarizing the Peabody incident, it did not specifically note that Massachusetts license plate number 353PY1 was observed.  The affidavit did briefly describe the Salem robbery, stating:

> A short time later, the North Shore Bank located on Highland Avenue in Salem, Massachusetts was robbed by a male party with the same clothing description previously seen at the TD Bank in Peabody, Massachusetts. In this incident there was a suspicious vehicle observed in the area described as a black Volvo, Massachusetts registration 353PY1.

While one witness had reportedly seen a Volvo with Massachusetts plates in the vicinity of the Salem robbery, she actually had not been able to provide the license plate number.

The warrant was granted and officers installed the GPS device on the Volvo.  On July 22, 2014, officers observed a female, Dawn Spurr ("Spurr"), remove the 353PY1 license plate from the Volvo.  Officers returned later in the day and found the 353PY1 license plate affixed to a tan Acura parked on the street outside 9 Dark Lane.

On July 23, 2014, Detective Welch applied for and received a second warrant to affix a GPS tracking device to the tan Acura seen bearing the 353PY1 license plate registered to the Volvo. The supporting affidavit again summarized the five robberies and included verbatim the description from the first affidavit of the Peabody incident and subsequent Salem robbery on July 20, 2014.  The affidavit also noted that "suspects will often remove license plates ... to avoid detection from law [e]nforcement."

For approximately the next two weeks, FBI agents and police officers from Beverly, Salem and Peabody coordinated surveillance of the tan Acura which at all times had the 353PY1 license plate attached.  During this time, authorities identified defendant as the unknown suspect tied to the robberies.  On multiple occasions, defendant and Spurr were observed driving slowly in front of banks.  Each time, defendant was observed looking in the direction of the bank as they passed.

**C.   Arrest of Defendant**

On August 4, 2014, law enforcement again observed Spurr and defendant driving the tan Acura past banks in a number of towns north of Boston.  Ultimately, the Acura drove several times past Century Bank in Burlington, Massachusetts before pulling into a parking lot located across the street.  Patterson changed clothes inside the vehicle and emerged wearing dark pants and a

dark sweatshirt, ball cap, sunglasses and clear gloves.  He
began walking in the direction of Century Bank, looking from
side to side as he proceeded.

As he reached the corner of the Century Bank parking lot,
an FBI SWAT vehicle began to drive toward defendant.  As a
result, defendant turned around and attempted to walk back
across the street to the parked Acura but before he could, FBI
agents approached defendant and ordered him to raise his hands.
As he did so, agents observed an apparent handgun drop to the
ground.  It turned out to be a black BB gun.  Both Patterson and
Spurr were arrested at the scene and Patterson subsequently made
incriminating statements.

### D.   Procedural History

In December, 2014, defendant was indicted on five counts of
Bank Robbery While on Release, in violation of 18 U.S.C.
§§ 2113(a) and 3147 (Counts I-V) and one count of Attempted Bank
Robbery While on Release, in violation of 18 U.S.C. §§ 2113(a)
and 3147 (Count VI).

In May, 2015, Patterson filed 1) a motion for a Franks
hearing to challenge the affidavit supporting the warrant for
GPS tracking and 2) two motions to suppress purportedly
illegally obtained evidence stemming from the GPS tracking and
his eventual arrest.

The government opposes all three motions.

## II.  **Motion for a Franks Hearing**

First, Patterson moves for a <u>Franks</u> hearing to test the truthfulness of certain statements made by Detective Welch in his affidavit given in support of the application for a warrant to install a GPS tracking device on the tan Acura vehicle. Defendant challenges only the second affidavit that sought GPS tracking on the tan Acura but the language at issue is identical in both affidavits and, accordingly, the Court will treat the motion as a challenge to both affidavits and the resulting search warrants.

### A.   **Legal Standard**

As a baseline, a sworn affidavit filed in support of a search warrant is entitled to a presumption of validity. <u>United States</u> v. <u>Rigaud</u>, 684 F.3d 169, 173 (1st Cir. 2012).  In <u>Franks</u> v. <u>Delaware</u>, 438 U.S. 154 (1978), the United States Supreme Court established a stringent standard that must be satisfied in order to refute that presumption at an evidentiary hearing.

A <u>Franks</u> hearing is warranted only if a defendant makes "substantial preliminary showings" that 1) a false statement or omission in a warrant affidavit was made knowingly or with reckless disregard for the truth and 2) the falsehood or omission was necessary to the finding of probable cause. <u>Rigaud</u>, 684 F.3d at 173 (citations omitted).  Both prongs must be satisfied to warrant a hearing. <u>Id.</u>; <u>see also</u> <u>United States</u> v.

<u>Swanson</u>, 210 F.3d 788, 790 (7th Cir. 2000) ("These elements are hard to prove, and thus <u>Franks</u> hearings are rarely held.")

**B.   Application**

Patterson contends that two statements in Detective Welch's affidavit are materially false and were intentionally made in order to establish probable cause.

### 1.   Location of Observation of 353PY1 License Plate

First, defendant points to the paragraph in the affidavit that states that the black Volvo with license plate number 353PY1 was seen "in the area" at approximately the time of the Salem robbery.  Defendant argues that the statement is false because the only person who claimed to see the 353PY1 license plate on a four-door, black Volvo was the witness to the Peabody incident earlier on the same day of the Salem robbery.  As such, defendant contends there is no evidence tying the 353PY1 license plate to any of the five robberies either temporally or geographically.

The government acknowledges that it was a factual misstatement to include the reported observation of the 353PY1 license plate in the affidavit's summary of the Salem robbery. Nevertheless, the government argues that the misstatement was not intended to mislead the magistrate and was not material because its proper inclusion in connection with the preceding

9

Peabody incident still would have resulted in a finding of
probable cause.

The Court agrees.  The affidavit is not a shining example
of attention to detail when compared to the original police
reports of the Peabody incident and the Salem robbery.  In five
brief paragraphs, the affidavit superficially summarizes both
incidents.  Undoubtedly, the inclusion of the observation of the
353PY1 license plate at the Salem robbery was erroneous and
should have been included in an earlier paragraph in connection
with the Peabody incident.

Nonetheless, there was simply no incentive for Detective
Welch to falsify the connection between the license plate and
the Salem robbery.  Had the affidavit correctly described the
353PY1 license plate as having been observed at the Peabody
incident, which occurred only 30 or 40 minutes earlier and less
than four miles away, the magistrate would still have had ample
justification to find probable cause.  See United States v.
Adams, 305 F.3d 30, 36 n.1 (1st Cir. 2002) (second prong of
Franks hearing analysis calls for consideration of whether the
corrected affidavit would have failed to support a finding of
probable cause).  Thus, the misstatement was immaterial to the
probable cause determination.

For substantially the same reasons, defendant fails to
convince the Court that the misstatement was made knowingly or

10

in reckless disregard for the truth.  Instead, tying the 353PY1 license plate observation to the Salem robbery was, at most, negligent.  "Mere inaccuracies, even negligent ones" do not warrant a Franks hearing. United States v. Santana, 342 F.3d 60, 66 (1st Cir. 2003).

### 2.  Clothing Description

Defendant also attacks the veracity of the affidavit that describes the suspect at the Salem robbery wearing "the same clothing" as the individual from the earlier Peabody incident. In support of his position, defendant focuses on the differences in eyewitness accounts detailed in the police reports of the two events.  At the Peabody incident, the male individual was reportedly seen in "a red hooded sweatshirt with the hood pulled up tight around his face."  At the Salem robbery, the suspect was described as wearing "a dark workout suit (pants and jacket)" with a dark blue bandana covering his face.  Thus, defendant avers that such differences reveal that the statement in the affidavit was materially false.

What defendant overlooks, however, is that witnesses from both the Peabody incident and the Salem robbery describe the individuals in question as wearing aviator-style sunglasses and clear gloves, significantly similar pieces of attire.  The affidavit certainly could have more accurately noted that both individuals were seen wearing long sleeve tops, aviator-style

11

sunglasses and gloves and had clothing obstructing their faces, rather than describing them as being in the "same clothing."

Once again, although defendant establishes that the statement was inaccurate, he fails to establish that it was made knowingly or in reckless disregard for the truth or that it was material to the probable cause determination. See United States v. Castillo, 287 F.3d 21, 25 n.4 (1st Cir. 2002) ("If a false statement is in the affidavit, the inquiry is whether its inclusion was necessary for a positive finding by the magistrate on probable cause."). The misstatement appears to be mere negligence on the part of Detective Welch and reveals a lack of attention to detail, not an ulterior motive to obtain a warrant that otherwise would have been denied for lack of probable cause. See Santana, 342 F.3d at 66. Providing a more accurate description of the similarities of the appearances of the subject individuals would have been advisable but, where the corrected, more detailed description would still have resulted in a probable cause finding, Detective Welch's failure to include such detail does not warrant a Franks hearing.

Ultimately, Patterson has failed to make the "substantial preliminary showing" sufficient to entitle him to a Franks hearing with respect to either of the two statements at issue and, accordingly, the motion will be denied.

III. **Motions to Suppress**

Next, Patterson contends that the fruits of 1) the GPS tracking and 2) his arrest should be suppressed because neither the affidavits supporting the issued GPS warrants nor his arrest were supported by probable cause.

A.    **Fruits of GPS Tracking**

The installation of a GPS device, and subsequent tracking of a suspect's vehicle, constitutes a search under the Fourth Amendment to the United States Constitution. United States v. Baez, 744 F.3d 30, 35 (1st Cir. 2014) (citing United Sates v. Jones, 132 S. Ct. 945 (2012)).  Prior to effectuating a search, typically police must secure a warrant supported by probable cause. United States v. Gifford, 727 F.3d 92, 98 (1st Cir. 2013).  If it is later determined that the warrant issued without probable cause, evidence collected pursuant to the warrant must be excluded. See id.

Probable cause to issue a search warrant exists so long as "the totality of the circumstances create a fair probability that evidence of a crime will be found in a particular place." United States v. Silva, 742 F.3d 1, 7 (1st Cir. 2014) (quoting United States v. Hicks, 575 F.3d 130, 136 (1st Cir. 2009)) (internal quotation marks and alteration omitted).  This determination requires a "practical, common-sense decision" as to whether the affidavit would lead "a man of reasonable

13

caution" to conclude that evidence of a crime will be found.
United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999)
(citations omitted).  Reasonable inferences can be drawn from
the facts set out in the supporting affidavit. United States v.
Barnard, 299 F.3d 90, 93 (1st Cir. 2002).

Defendant avers that affidavits supporting GPS tracking of
the black Volvo and tan Acura fail to establish probable cause
that either vehicle had been involved in any of the five
robberies.  Defendant maintains, in particular, that the
affidavits fail to connect the five robberies to the 353PY1
license plate and only state that the Volvo "possibly" was being
used to transport the unknown suspect to and from the robberies.
Defendant also contends that the identification of the 353PY1
license plate was obtained solely through the reported
observations of the unidentified witness to the Peabody incident
whose reliability was "wholly unsubstantiated."

Defendant's arguments are unavailing.  A witness at the
Peabody incident observed license plate number 353PY1 on a four-
door, black Volvo shortly before the Salem robbery.  Contrary to
defendant's assertion, that witness could properly be relied
upon in light of his firsthand knowledge of the events he
observed and the follow-up corroboration conducted by law
enforcement after receiving information with respect to the
reported license plate number. See United States v. Tiem Trinh,

14

665 F.3d 1, 10 (1st Cir. 2011) (detailing a "nonexhaustive list of factors" to consider when weighing a probable cause showing predicated on witness reports to law enforcement).

The Peabody incident, as already discussed, took place only 30 or 40 minutes before, and less than four miles from, the Salem robbery.  A Volvo of similar appearance was observed at three of the five robberies, including at the Salem robbery.[2] Subsequently, law enforcement ran the plate number and tracked the black Volvo.  The license plate had been removed and a day later, agents witnessed Spurr again remove the license plate which was subsequently seen affixed to the tan Acura.  Detective Welch included in his affidavit that, "through [his] training and experience," suspects to crimes often removed license plates to avoid detection from law enforcement. See United States v. Zayas-Diaz, 95 F.3d 105, 111 (1st Cir. 1996) (insights of expert law-enforcement appropriately considered as part of probable cause analysis).

Considering the totality of the circumstances, the magistrate judge correctly concluded that evidence related to the five robberies could be found by permitting tracking of the Volvo and Acura and issued both warrants predicated on probable

---

[2] Witnesses also observed three passengers, two in the front seat and one in the back seat, at both the Peabody incident and the Salem robbery.

cause.  As such, defendant's motion to suppress the fruits of
the GPS tracking will be denied.

**B.   Fruits of Arrest**

Finally, defendant avers that there was no probable cause
that he had committed, or was in the process of committing, a
crime at the time of his arrest and, therefore, the
incriminating statements he made are impermissible fruits of his
arrest and should be suppressed.

A warrantless arrest of an individual in a public place
must be supported by probable cause. Maryland v. Pringle, 540
U.S. 366, 370 (2003).  In this context, probable cause exists
when

> at the time of arrest, the facts and circumstances known
> to the arresting officers were sufficient to warrant a
> prudent person in believing that [the suspect] had
> committed or was committing an offense.

United States v. Bizier, 111 F.3d 214, 217 (1st Cir. 1997).

It strains credulity to contend that, at the time of his
arrest, FBI agents lacked probable cause to arrest defendant on
August 4, 2014.  For approximately two weeks, law enforcement
conducted surveillance of the tan Acura bearing the license
plate previously seen at the Peabody incident shortly before the
Salem robbery occurred on July 20, 2014.  During that time,
agents observed defendant on multiple occasions, including

16

earlier on the day of his arrest, casing banks as he and Spurr
drove by.

In the immediate lead-up to Patterson's arrest, agents
witnessed Spurr drive the Acura several times past Century Bank
in Burlington, Massachusetts.  They then observed Patterson
change clothes in the back seat across the street from Century
Bank and emerge from the vehicle dressed in a fashion similar to
that which had been described of the robber seen at the five
previous robberies: dark, long sleeved and long pant clothing,
his head and face partially covered, and wearing sunglasses and
clear gloves.  He then walked in the direction of the bank
intently scanning his surroundings.

As defendant approached the bank, he was apprehended by law
enforcement but not before he spotted them and attempted to
retreat to his vehicle.  By that time, however, probable cause
existed to arrest him for attempted bank robbery of Century
Bank. See United States v. Chapdelaine, 989 F.2d 28, 33 (1st
Cir. 1993); see also United States v. Turner, 501 F.3d 59, 69
(1st Cir. 2007) (abandonment of attempted robbery irrelevant
once "substantial step" had taken place).[3]

---

[3] In fact, considering his appearance upon emerging from the
vehicle and in light of information collected to that point,
agents had sufficient circumstantial evidence to establish
probable cause and to arrest him for the prior five robberies as
well.

Accordingly, his motion to suppress the fruits of that arrest will be denied.

**C.    Evidentiary hearing**

An evidentiary hearing is required only if the moving party

> makes a sufficient threshold showing that material facts
> are in doubt or dispute, and that such facts cannot
> reliably be resolved on a paper record.

United States v. Jimenez, 419 F.3d 34, 42 (1st Cir. 2005). Criminal defendants are not granted evidentiary hearings as a matter of course. See United States v. Panitz, 907 F.2d 1267, 1273 (1st Cir. 1990) ("a criminal defendant has no absolute or presumptive right to insist that the district court take testimony on every motion").

Defendant has not made a sufficient threshold showing necessary for an evidentiary hearing on either of his motions to suppress.  Accordingly, both of his motions will be denied without such a hearing.

**ORDER**

For the foregoing reasons,

1)   defendant's motion for a <u>Franks</u> hearing (Docket No. 40) is **DENIED;**

2)   defendant's motion to suppress evidence obtained illegally as a result of the installation of a GPS tracking device (Docket No. 42) is **DENIED;**

3)   defendant's motion to suppress evidence obtained as a result of his illegal arrest (Docket No. 44) is **DENIED;** and

4)   the Court finds that defendant has not made a sufficient threshold showing to warrant an evidentiary hearing.

**So ordered.**

_/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated August 11, 2015