UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
UNITED STATES OF AMERICA      )
                              )
       v.                     )      Criminal No. 14-10352-NMG
                              )
JAMES A. PATTERSON,           )
       Defendant.             )
```

## GOVERNMENT'S SENTENCING MEMORANDUM

On November 23, 2015, defendant James Patterson ("Patterson") was found guilty after a jury trial to five counts of bank robbery, in violation of 18 U.S.C. § 2113(a).  Patterson was acquitted on the sixth count of the indictment which alleged attempted bank robbery.

The Pre-Sentence Report ("PSR"), prepared by the United States Probation Office, dated February 10, 2016, concluded that Patterson's total offense level was 28, that his criminal history category was III, and that his guideline imprisonment range was 97 to 121 months' imprisonment.  [PSR ¶ 193].  For the reason stated herein the government believes that a sentence at 121 months' imprisonment, the high-end of the advisory range, is an appropriate disposition in this matter.  The government also requests that Patterson be placed on supervised release for a period of three years, be ordered to pay restitution in the amount of $38,871.00 to the banks listed in the indictment, and be ordered to pay a special assessment of $500.00.

A sentence of 121 months' imprisonment is merited in this case. It is clear from the information set forth in the PSR that the defendant is an unrepentant violent criminal.

## I. FACTS

The facts as stated in the PSR have not been contested and were established during trial.

On April 16, 2014, a black male, later determined to be Patterson, entered the Beverly Bank located at 63 Dodge Street, Beverly, MA. Patterson was wearing dark pants, a black vest, a white sweatshirt, a black baseball hat, large dark sunglasses, and clear latex gloves. The vest was pulled up over his mouth and nose. Patterson stood in the middle of the bank and stated, "This is a robbery, get your hands up, I want all of your money." He then stated "I want 100's, 50's, and 20's." Each teller placed money on the counter in front of his/her window, and Paterson placed the money in his vest pockets. Patterson returned to one teller and stated "I told you 100's and 50's." The teller then gave Patterson more money. Patterson then told everyone not to call the police for five minutes as he would be watching. Patterson then exited the bank and walked along the sidewalk before crossing the street, walking through a Walgreen's parking lot, and running up the street. Video surveillance of Patterson in the Walgreen's parking lot was captured by Walgreen's video surveillance cameras.

A post-robbery audit determined that Patterson had taken $10,740.00 in U.S. currency.

On May 10, 2014, a black male, later determined to be Patterson, entered the People's United Bank located at 63 Dodge Street, Beverly, MA.  Patterson was wearing black pants, a black hoodie, a dark blue Red Sox coat, dark sneakers with white stripes, a black mask, mirrored sunglasses, and clear rubber gloves.  After he entered the bank, Patterson yelled, "This is a robbery, give me all your 50's and 100's, put your hands up." He also stated, "Don't try anything, I got someone outside waiting!"  Patterson then took money from the four tellers and placed it in his pockets.  Next, Patterson exited the bank and walked through the same Walgreen's parking lot in the same direction as he did the Beverly Bank robbery.  Video surveillance of the robber in the Walgreen's parking lot was captured by Walgreen's video surveillance cameras.  The video surveillance cameras additionally captured an image of a dark Volvo sedan leaving the area from the direction in which the Patterson had fled.

A post robbery audit determined that Patterson had taken $5,936.00 in U.S. currency.

On June 4, 2014, a black male, later determined to be Patterson, entered the Century Bank located at 102 Fellsway West, Somerville, MA.  Patterson was wearing black pants, a

3

silver hooded jacket, a white baseball cap, white/red sneakers, a black mask, reflective sunglasses, and clear latex gloves. After he entered the bank, Patterson went into the manager's office and stated, "This is a robbery," and demanded that the manager accompany him to the teller's window.  As Patterson approached the lobby area, he stated, "This is a robbery, I want all of your fucking money or I'll shoot all of you, large bills only, 100's and 50's."  The tellers emptied their drawers and placed the money in their trays, and Patterson grabbed the money.  When Patterson observed a twenty dollar bill, he stated, "If you don't give me all of the money, I'll shoot up the whole fucking place."  As Patterson exited the bank, he grabbed his waistband and stated, "Don't call the cops for five minutes, I have someone outside watching."

A post robbery audit determined that Patterson had taken $4,350.00 in U.S. currency.

On June 12, 2014, a black male, later determined to be Patterson, entered the South Shore Bank located at 1538 Turnpike Street, Stoughton, MA.  Patterson was wearing a white track suit, a black baseball hat, a white bandana across his face, dark sunglasses, and clear plastic gloves.  After he entered the bank, Patterson shouted, "This is a robbery."  As Patterson approached a teller's window, he yelled, "Give me all the fifties and hundreds, you have one minute."  After the teller

4

handed Patterson the money in his drawer, Patterson shouted, "Give me more."  The teller showed Patterson that the drawer was empty.  As Patterson approached the next teller, he shouted, "Give all the fucking fifties and hundreds, you have one minute."  After the teller gave Patterson all the fifty and hundred dollar bills, he shouted, "Give me more."  The teller then gave Patterson all the twenty dollar bills.  Patterson walked towards the door and shouted, "Get down."  He then said, "Don't call the police for five minutes, I have someone outside watching."  Patterson then left the bank.

Before and after the robbery, video surveillance from a store neighboring the South Shore Bank showed Patterson traveling to/from the bank on foot.  After the robbery, the video depicted Patterson getting into the rear passenger seat of a parked car being operated by another person.  The car was a black 4-door car, which appeared to possibly be a Volvo.

A post-robbery audit determined that Patterson had taken $6,790.00 in U.S. currency.

On July 20, 2014, a black male, later determined to be Patterson, entered the North Shore Bank located at 319 Highland Avenue, Salem, MA.  Patterson was wearing a dark workout suit, a blue baseball hat, a dark blue bandana across his face, large aviator-style glasses, and clear plastic gloves.  Patterson entered the bank directly behind another customer, and told the

customer, "Get on the ground this is a robbery." Patterson
approached a teller's window and stated, "This is a robbery, I
have a weapon, I have someone waiting outside if you take too
long someone is gonna go down, hurry up." Patterson kept his
hand in the right pocket of his jacket and motioned as if he had
a gun. Patterson demanded twenties initially, and then demanded
all the money, including fifties and hundreds. At one point,
Patterson stated, "I told you to hold your hand up if you don't
I will have to blow your fucking head off." He also stated, "I
am leaving don't anyone turn around and look or I will blow your
head off." After gathering the money, Patterson left the bank.

Following the robbery, a witness observed a black male,
later determined to be Patterson, with a baseball hat and a dark
mask covering his face walking out of the plaza where the bank
is located. Patterson then got into the back seat of an older
model 4-door Volvo with Massachusetts license plates. The Volvo
was pulled over on the right side of the road with its blinker
on, approximately 100 yards from the plaza's entrance. The
witness described the Volvo as green. As the witness continued
to her destination, she observed the Volvo drive by, and
observed the black male in the back seat, with two heavy-set
white or possibly light-skinned Hispanic females in the front
seat.

Earlier on July 20, 2014, prior to the robbery, a witness observed a black male, later determined to be Patterson, wearing sunglasses and gloves, acting suspiciously in the area of the TD Bank at 31 Cross Street in Peabody, MA.  As the witness approached Patterson, Patterson got into the rear of a gray/black Volvo, with Massachusetts Registration No. 353PY1, which then drove off.  According to the Registry of Motor Vehicles database, Massachusetts Registration No. 353PY1 is a black 1994 Volvo, registered to Richard Powers of Peabody, MA. Richard Powers was later determined to be the husband of Dawn Spurr ("Spurr").

A post-robbery audit determined that Patterson had taken $7,055.00 in U.S. currency.

The above robberies were investigated by the Boston F.B.I.'s Violent Crimes Task Force and local law enforcement. Due to many similarities between the robberies, (i.e. description of the robber, manner of the robbery, physical locations, bank surveillance photos, verbal demands for large denominations of cash, no weapon displayed, the absence of any demand notes and the presence of a dark colored Volvo) law enforcement opined that the same individual was involved in the five bank robberies.

Law enforcement queried the Massachusetts Registry of Motor vehicle in regards to registration plate 353PY1.  They

determined that the plate was registered to a 1994 black Volvo sedan and owned by an individual living at 9 Dark Lane, Peabody, Massachusetts. Law enforcement additionally determined that this individual's ex-wife was Spurr.

On July 21, 2014, law enforcement conducted surveillance and observed the black Volvo parked in the driveway of 9 Dark Lane.  There were no registration plates attached to the Volvo.

On July 21, 2014, law enforcement again conducted physical surveillance at the Peabody address.  During this surveillance, officers observed the black Volvo parked in the driveway with no plates attached.  The next day law enforcement observed an individual, later identified as Spurr operating the black Volvo and then removing the plates.  Officers also observed the 353PY1 license plate, which belongs to the Volvo, attached to a brown/tan Acura Legend.  In addition, the inspection sticker had been removed from the Volvo and attached to the Acura.

On July 23, 2014, law enforcement observed Spurr operating the Acura with the 353PY1 license plate attached.  Law enforcement observed Patterson in the front passenger seat of the car.  Law enforcement followed the car from the area of Spurr's home to the residential address of Patterson in Brockton, MA.  Law enforcement observed the Acura pull into the driveway of Patterson's residential address and observed both Patterson and Spurr enter the residence.

8

On August 4, 2014, law enforcement conducted surveillance at Spurr's house.  Law enforcement observed Spurr and Patterson exit the residence and enter the Acura with the 353PY1 license plate attached, Spurr entering the front driver's side, and Patterson the front passenger's side.  As Spurr drove Patterson from town to town in the Acura, law enforcement observed them driving past the front and rear of several banks, and slowing down in front of the banks.  Eventually, officers observed the Acura driving past and slowing down in front of the Century Bank at 134 Cambridge Street, Burlington, MA.

After driving past the bank several times, Spurr parked the Acura in the rear lot of 129 Cambridge Street.  Patterson then changed clothes inside the Acura.  Patterson emerged from the Acura wearing dark clothes, sunglasses, a baseball cap, and clear plastic gloves and crossed Cambridge Street.  Patterson then walked towards the location of the bank at 134 Cambridge Street.  As Patterson approached the corner of the bank parking lot, the FBI moved to arrest Patterson.  As the FBI SWAT vehicles drove toward Patterson and entered onto Cambridge Street, Patterson noticed the vehicles, turned around, and began walking back in the direction of the Acura.  Before Patterson could reach the Acura, the FBI stopped Patterson and ordered him to raise his hands.  As Patterson was raising his hands, a black handgun-style gun, which was later determined to be a BB gun,

dropped to the ground.  Patterson was then arrested.  Spurr was
ordered out of the Acura and was arrested as well.

After his arrest, Patterson was informed of his *Miranda*
rights, which he acknowledged and waived.  Patterson asked,
"What do I have to do to get my girl off?"  Patterson was asked
what he had been doing for the past two weeks, to which he
replied, "Not much."  When Patterson was informed that he had
been under surveillance by the FBI, Patterson stated, "Ok, I
know I can't help myself but what can I do to get my girl off."
Patterson asked whether his girlfriend was going to get
probation or jail time.  Patterson was asked if the Acura was
his, to which Patterson replied, "I bought it for my girl."
Patterson asked if there was something he could sign that would
allow Spurr to walk out of the police station that night.
Patterson stated that when he and Spurr were arrested last year
for bank robbery in Rhode Island, he was able to sign something
that allowed Spurr to leave the station.

After her arrest, Spurr was informed of her Miranda rights,
which she acknowledged and waived.  After initially lying, Spurr
admitted that she knew Patterson's intent that day was to rob a
bank.  Spurr also admitted to driving Patterson to two bank
robberies in Beverly, a bank robbery in Salem, and two other
bank robberies, although she could not recall the specific towns
in which they occurred.  However, Spurr described the Mystic

Valley Parkway area as the location of one robbery and recalled
that another robbery occurred on the way to Brockton, MA.  The
Century Bank located at 102 Fellsway West, Somerville, MA is
just off the Mystic Valley Parkway.  The South Shore Bank
located at 1538 Turnpike Street, Stoughton, MA, is just off
Route 24, approximately five miles from Brockton.

During the November 2015 trial, Spurr testified at length
about her and Patterson's involvement in the aforementioned
robberies and that she was with Patterson on the date of August
4, 2014, and that they drove to the Century Bank in Burlington.
Spurr testified that, following Patterson's direction, she
parked the Acura down the road from the Century Bank, observed
Patterson change his clothing in the car, remove a BB gun from
the glove box in the Acura, exit the Acura, and walk towards the
bank.

## II.   GUIDELINE ANALYSIS

### A. Offense Level Computation [¶ 17]

The government agrees with Probation's conclusions that
Patterson's Total Offense Level is 28. [PSR ¶ 73]

### B. Criminal History

The government agrees with Probation's conclusions that
Patterson, with a criminal history score of five, is in criminal
history category III. [PSR ¶ 126]

## III. **ARGUMENT**

18 U.S.C. § 3553(a) requires a sentencing court to consider specific enumerated factors when determining an appropriate sentence.  These factors include: 1) "the nature and circumstances of the offense and the history and characteristics of the defendant" and 2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide for the needs of the defendant.

Patterson, age 47, is a violent criminal. Patterson's criminal record spans 30 years and includes over 46 adult convictions.  The majority of these convictions involve violent criminal conduct and include multiple convictions for assault, assault and battery, assault and battery with a dangerous weapon, escape, violations of restraining orders, and bank robbery.  Patterson has been sentenced to prison 21 times with sentences ranging from a few months to a recent sentence of 151 months' imprisonment.  The latter was imposed on Patterson in 2000 following a conviction in this district for bank robbery (00-CR-10226-GAO).[1]  This trail of violence and convictions

---

[1] As indicated by the PSR, this case originated in Lowell District Court as #0011CR1266. Patterson was charged with armed and masked robbery. In that action, Patterson expressed his intent to waive indictment, and a 6-count

brings us to the obvious conclusion that Patterson is the epitome of a career criminal with little or no regard for society or its rules.  His inability and constant refusal to conform his behavior to acceptable societal norms can no longer be tolerated.

At no time has Patterson demonstrated any inclination or desire to stop his violent criminal conduct.  The only time period in which Patterson has not committed any violent crimes has been when he has been incarcerated.  Therefore the appropriate sentence is a sentence at the high-end of the guidelines, 121 months' imprisonment, to be followed by three years of supervised release.

### A.   DEFENDANT IS A VIOLENT CRIMINAL

Patterson has a long and violent criminal record that spans 30 years, beginning in 1985 and continuing to his most recent arrest.  The PSR is replete with instances of violent criminal conduct and include multiple convictions for assault, assault and battery, assault and battery with a dangerous weapon, escape, violations of restraining orders, and bank robbery.

---

Information was filed in U.S. District Court as #00CR10126-MLW.  The Information charged six counts of bank robbery (occurring in January and February 2000).  These charges were dismissed one day after Patterson was indicted by a federal grand jury for the single count of bank robbery described in PSR ¶ 123.

Patterson's life has revolved around violent criminal activity.  He has spent the vast majority of his adult life incarcerated.

### B.   PATTERSON'S NUMEROUS VICTIMS

Throughout Patterson's life, he has left a trail of victims.  The PSR outlines his progression beginning with disorderly conduct and receiving stolen property and, within less than a year of his first conviction, escalating to assault and battery with a dangerous weapon.  Patterson's criminal activity steadily continued from 1985 through the 2000s, racking up over 46 adult convictions of assault, assault and battery, assault and battery with a dangerous weapon, escape, violations of restraining orders, and bank robbery.  Most alarming is his 2000 conviction for bank robbery (00-CR-10226-GAO) in which he served a 151 months' sentence [PSR ¶ 123].  In that case, Patterson entered a BankBoston branch in Billerica, Massachusetts, and handed a bank teller a note that read, "GIVE ME ALL THE MONEY OR I'LL KILL YOU DON'T TRY ANYTHING I HAVE A GUN." Following completion of that sentence and while on supervised release, Patterson continued with his life of violent crime and committed new offenses, including the five counts of bank robbery.

### C.   **PATTERSON'S REFUSAL TO REHABILITATE**

Patterson has no regard for the law, nor has he made any attempts at rehabilitation.  As set forth in the PSR, Patterson has a continuous criminal history from the age of 17 until his arrest on the instant case.  Patterson's numerous state criminal sentences have not curbed his violent criminal activity.  During these extended periods of incarceration, Patterson has had available countless opportunities to avail himself of education or vocational programs.  While serving his 151 months' sentence for bank robbery (00-CR-10226-GAO), it appears Patterson participated in educational classes but the PSR indicates that Patterson received countless disciplinary reports.  The most alarming of these include: multiple instances of possessing intoxicants; multiple instances of assault without serious injury (staff members and inmates); multiple instances of setting a fire; multiple instances of threatening bodily harm; multiple instances of destroying property; and multiple instances of possessing weapons.[2]

Significantly, after completion of the 151 months' sentence, Patterson's behavior on supervised release indicated that he had no inclination to stop his criminal activity.  He

---

[2] See PSR page 29, Bureau of Prisons (BOP) Adjustment

committed new crimes and failed to comply with substance abuse treatment.

### D.    THE INSTANT OFFENSES

Bank robbery is one of the most violent crimes the courts encounter.  The impact on the bank, its employees, and customers is significant.  The five robberies in this case involved cold-hearted calculation, detailed planning, and execution with little or no regard for the victim tellers or bank customers. As shown by evidence during trial, these robberies were deliberate acts involving planning and execution.  The use of disguises including sunglasses, hats, facial covering, gloves, and arranging for an exit vehicle parked away from the banks demonstrates this planning.

Two alarming examples of these five robberies demonstrate Patterson's perpetual propensity for violence.  For example, during the June 4, 2014 robbery, he stated "This is a robbery, I want all of your fucking money or I'll shoot all of you, large bills only, 100's and 50's," and later stated "If you don't give me all of the money, I'll shoot up the whole fucking place." Separately, during the July 20, 2014 robbery, Patterson stated at one point, "I told you to hold your hand up if you don't I will have to blow your fucking head off" and stated "I am leaving don't anyone turn around and look or I will blow your head off."

The robberies were not isolated, random acts. Patterson hatched and executed extensive plans for each robbery.  The facts of this case warrant a severe sentence with an extended period of incarceration. Moreover, Patterson continued to rob banks until his attempt to rob the Century Bank in Burlington, Massachusetts on August 4, 2014 was thwarted by the Federal Bureau of Investigation's Violent Crimes Task Force.

**IV.  CONCLUSION**

The government is well within it's right to recommend a sentence outside of the advisory guidelines, but believes that a sentence of 121 months' imprisonment, the high end of the advisory guidelines, 3 years of supervised release, a $500.00 special assessment and restitution in the amount of $34,871.00 is an appropriate sentence in this matter.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorneys

By:  */s/ Kenneth G. Shine*
KENNETH G. SHINE
ROBERT E. RICHARDSON
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Kenneth G. Shine*
KENNETH G. SHINE
Assistant U.S. Attorney